IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 13, 2016

## STATE OF TENNESSEE v. ANTHONY T. BRANDON

**Appeal from the Circuit Court for Bedford County**
**No. 17776      Forest A. Durard, Jr., Judge**

_____

**No. M2015-00654-CCA-R3-CD – Filed April 19, 2016**
_____

Defendant, Anthony T. Brandon, stands convicted of possession with intent to sell .5 grams or more of cocaine, possession with intent to sell .5 grams or more of cocaine base, and possession or casual exchange of marijuana. The trial court imposed an effective twenty-four-year sentence. On appeal, Defendant argues: (1) that there was insufficient evidence to support his convictions for possession with intent to sell .5 grams or more of cocaine and for possession with intent to sell .5 grams or more of cocaine base; (2) that his sentences were excessive; and (3) that the trial court should have merged Counts 1 through 4 into one conviction. Based on the parties' briefs, the record, and the applicable law, we merge Defendant's convictions for possession with intent to sell .5 grams or more of cocaine and possession with intent to sell .5 grams or more of cocaine base, but we affirm the judgments of the trial court in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Modified in Part and Affirmed in Part.**

TIMOTHY L. EASTER, J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J., joined. ROGER A. PAGE, Sp. J., not participating.

Donna Orr Hargrove, District Public Defender, and Michael J. Collins, Assistant District Public Defender, for the appellant, Anthony T. Brandon.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Counsel; Robert James Carter, District Attorney General; and Michael David Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This is Defendant's direct appeal from his Bedford county drug convictions that began with Defendant in a hotel room with a large sum of cash, powder cocaine, and cocaine base, also known as crack cocaine. As a result, Defendant was indicted for alternative theories of possession with intent to sell or deliver .5 grams or more of cocaine (Counts 1 & 2), alternative theories of possession with intent to sell or deliver .5 grams or more of cocaine base (Counts 3 & 4), and possession or casual exchange of marijuana (Count 5). After a jury trial, Defendant was convicted as charged.

*Facts*

Officers Jose Garza and Todd Sanders of the Shelbyville Police Department were dispatched to the Microtel Inn & Suites on July 4, 2013, at approximately 2:51 a.m. after a report was made about a man being too loud in one of the rooms. Upon their arrival, a loud male voice was heard inside the room. The officers knocked on the door. Defendant opened the door and inquired as to the problem. The officers told Defendant that the clerk wanted him to leave because he was being too loud, even after having been asked to be quiet. Defendant agreed to leave and stated that he would gather his things. Defendant asked the clerk for a refund of the deposit of "his money" on the room, and the clerk agreed. After the clerk went to retrieve the deposit, Defendant invited the officers into the room. Officer Garza stepped into the doorway of the room and saw Defendant walking around the room gathering items that were scattered "all over the room" and placing them into a trash bag. The hotel room appeared to be occupied by Defendant.

While Defendant was packing, Officer Sanders saw a "clear plastic baggy" containing "a white powdery substance"[1] lying in the bathroom floor near the door. Defendant initially denied owning the bag of cocaine but then later admitted that it belonged to him.[2] Defendant also produced two Crown Royal bags—one containing $1438 in cash and the other holding two marijuana "blunts"—from his pants pocket. The "blunts" emitted the very distinct odor of marijuana. Defendant did not attempt to

---

[1] Marked as trial exhibit 3, Officers Sanders and Garza testified the substance found on the bathroom floor was white powder. Later, TBI Agent Laura Cole identified trial exhibit 3 as 2.85 grams of cocaine base.

[2] During cross-examination, Officer Garza testified that on the night of Defendant's arrest, the officers' microphones were recording; however, Defendant's claim that the cocaine found on the bathroom floor was his could not be heard. Officer Garza explained that the relevant portion of the recording was "muffled" but acknowledged that some of Defendant's statements were clear on the recording. Officer Garza explained that large portions of the audio recording were inaudible because the two microphones—his and Officer Sander's—were so close together, which causes interferences with the recording.

retrieve a Crown Royal bag that was on the nightstand. Defendant refused to allow the officers to search the room, stating that the room was not in his name. The officers confirmed that the room was in the name of Shana Bryan, not Defendant. The officers then arrested Defendant and took him outside.

One of the officers called Officer Jody Shelton, who worked with a drug-detection dog, to come to the hotel room. When Officer Shelton and his K-9 partner, Julie, entered the room, the dog "alerted" by the nightstand near the bed. On one of the nightstand's shelves, Officer Shelton found a Crown Royal bag with crack cocaine and powder cocaine inside. There was also $7120 in cash inside the Crown Royal bag. Based on his experience as a police officer, Officer Garza opined that the amount of crack cocaine was more than the average user normally possessed. Officer Shelton testified that based on his experience as a narcotics officer, users of crack cocaine were generally only found with a single rock of crack cocaine and usually did not have large amounts of cash in their possession.

Office Garza testified that officers later discovered that Amy Merlow was also staying with Defendant in the hotel room. When she returned to the hotel, she smelled of alcohol. She passed field sobriety tests administered onsite by officers. Ms. Merlow initially refused a search of her vehicle. However, the car was searched after the drug-detection dog "alerted" by the vehicle. Inside the car, Officer Shelton found a "crack pipe," which is used to smoke crack cocaine. No other narcotics were found inside the car. Ms. Merlow was not charged with possession of drug paraphernalia or possession of any of the cocaine found in the hotel room.

The narcotics found in the hotel room in this case were identified by the Tennessee Bureau of Investigation as powder cocaine and cocaine base (also known as crack cocaine). The powder cocaine weighed 6.24 grams and the cocaine base weighed 2.85 grams and 14.74 grams. Special Agent Laura Cole explained that powder cocaine and cocaine base are both cocaine but that cocaine base is created by cooking or baking powder cocaine, which changes the narcotic's chemical composition. She explained that cocaine users smoke cocaine base and "snort[]" powder cocaine.

Timothy Lane, the director of the Drug Task Force for the 17th Judicial District, testified that during his nineteen years as director of the Drug Task Force, crack cocaine had been a problem in that judicial district and that during that time, the Drug Task Force had been involved with approximately 1500 felony drug cases involving crack cocaine. Director Lane explained that if he encountered someone with 6.24 grams of powder cocaine, he would infer that the person possessed the drugs with the intent to distribute or sell them. Director Lane testified that powder cocaine sells on the street for between $80 and $100 a gram; therefore, 6.24 grams would be worth approximately $600. Similarly, Director Lane explained that possession of over 17 grams of crack cocaine indicated that

the person had the drugs for the purpose of distribution or resale because users of crack cocaine normally possessed only .2 to .4 grams. Director Lane stated that .2 grams of crack cocaine is normally sold for approximately $50. He explained that a narcotics user rarely possesses both crack cocaine and powder cocaine; they usually have one or the other. Director Lane also explained that individuals distributing and selling cocaine frequently "set up shop" in a hotel room so that their business does not attract attention to their homes.

Jason Bryan, Shana Bryan's husband, testified for Defendant. He saw both Defendant and Amy Merlow on the day prior to Defendant's arrest because he helped Defendant move from one hotel to another. Ms. Merlow was at a store across from the hotel with what appeared to be "several thousand dollars" in cash. Mr. Bryan explained that he had never seen either Defendant or Ms. Merlow with that much money before. Mr. Bryan had two prior theft convictions and one prior attempted theft conviction.

The parties stipulated that Rick Overcast, a bondsman, would have testified that Ms. Merlow paid Defendant's bond in the amount of $1200 in cash. Mr. Overcast also would have testified that it is not uncommon for one person to pay another person's bond.

The jury subsequently convicted Defendant of possession with intent to sell .5 grams or more of cocaine (Count 1), possession with intent to deliver .5 grams or more of cocaine (Count 2), possession with intent to sell .5 grams or more of cocaine base (Count 3), possession with intent to deliver .5 grams or more of cocaine base (Count 4), and possession or casual exchange of marijuana (Count 5). The trial court merged Counts 1 and 2 and merged Counts 3 and 4. Therefore, Defendant stands convicted of possession with intent to sell .5 grams or more of cocaine, possession with intent to sell .5 grams or more of cocaine base, and possession or casual exchange of marijuana. The trial court imposed an effective twenty-four-year sentence.

*Analysis*

Defendant argues: (1) that there was insufficient evidence to support his convictions for possession with intent to sell .5 grams or more of cocaine and for possession with intent to sell .5 grams or more of cocaine base; (2) that his sentences were excessive; and (3) that the trial court should have merged Counts 1 through 4 into a single conviction for possession with intent to sell .5 grams or more of cocaine. The State responds that there was sufficient evidence to uphold Defendant's convictions, that his sentences were justified, and that the trial court's refusal to merge Defendant's convictions for possession with intent to sell or deliver .5 grams or more of cocaine and possession with intent to sell or deliver .5 grams or more of cocaine base into one count was proper.

I. Sufficiency of the Evidence

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. The relevant question is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury's verdict replaces the presumption of innocence with one of guilt; therefore, the burden is shifted onto the defendant to show that the evidence introduced at trial was insufficient to support such a verdict. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). The prosecution is entitled to the "strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Questions concerning the "credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact." *Wagner*, 382 S.W.3d at 297 (quoting *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008)). "A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." *Reid*, 91 S.W.3d at 277 (quoting *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)). It is not the role of this Court to reweigh or reevaluate the evidence, nor to substitute our own inferences for those drawn from the evidence by the trier of fact. *Id.* The standard of review is the same whether the conviction is based upon direct evidence, circumstantial evidence, or a combination of the two. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009).

To prove that Defendant possessed with intent to sell or deliver .5 grams or more of cocaine or cocaine base, the State must show that Defendant knowingly possessed the controlled substance with the intent to sell and deliver it. T.C.A. § 39-17-417(a)(4). "A violation of subsection (a) with respect to . . . [c]ocaine . . . is a Class B felony if the amount involved is point five (0.5) grams or more of any substance containing cocaine. . . ." *Id.* § 39-17-417(c)(1).

Viewing the evidence in the light most favorable to the State, there was sufficient evidence to support Defendant's convictions. Officers Garza and Sanders both testified that Defendant was discovered alone in a hotel room and that when asked to leave, Defendant requested a refund of the room deposit. Inside the room, officers found a small bag of cocaine on the bathroom floor, which Defendant admitted belonged to him. Defendant also produced two Crown Royal bags—one containing $1438 in cash and the other holding two marijuana "blunts"—from his pants pocket. Finally, after K-9 Julie searched the room, Officer Shelton discovered a Crown Royal bag containing crack cocaine, powder cocaine, and $7120 in cash. Special Agent Cole testified that the

powder cocaine found in the room weighed 6.24 grams and the cocaine base weighed 2.85 grams and 14.74 grams. Director Lane testified that the amount of drugs found in this case, along with the large amount of cash, was indicative of someone selling drugs rather than just using drugs. This evidence, taken together, was sufficient to support Defendant's convictions for possession with intent to sell .5 grams or more of cocaine and cocaine base and possession with intent to deliver .5 grams or more of cocaine and cocaine base. Defendant is not entitled to relief on this issue.

## II. Sentencing

Defendant also argues that his sentences were excessive and contrary to the law. The State responds that the trial court did not abuse its discretion during sentencing.

## A. Facts from Sentencing Hearing

The State introduced Defendant's presentence report into evidence and asked that the facts from trial be incorporated by reference. Defendant introduced a paycheck stub from shortly before trial; Defendant's short term disability application from 2005; a leave of absence request; and a certificate of completion from Buffalo Valley, a treatment facility for drug and alcohol abuse.

The State requested that the trial court apply three enhancement factors: "(1) The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range"; "(2) The defendant was a leader in the commission of an offense involving two (2) or more criminal actors"; and "(8) The defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community." The State also requested consecutive sentencing.

After hearing arguments from both parties, the trial court ruled that Defendant was a Range I, standard offender. The trial court found that enhancement factors (1) and (8) applied and put "considerable emphasis" on those two factors. Defendant had at least 18 prior misdemeanor convictions and one prior felony conviction. The trial court was especially concerned that while on bond and probation for a felony drug offense in 1996, Defendant committed several other offenses. The trial court noted that Defendant's "track record on community release is poor. . . [and] miserable." The trial court found that while it believed there were other actors involved in this case, there was not enough evidence in the record to establish enhancement factor (2). The trial court found that no mitigating factors applied. The trial court imposed a sentence of 12 years for each possession with intent to sell conviction and a sentence of 11 months and 29 days for the possession of marijuana conviction.

As to whether the sentences should run concurrently or consecutively, the trial

court noted the State's argument that Defendant was a professional criminal who has devoted his life to criminal activity as a major source of livelihood. The trial court explained that "[t]his was not a little drug deal. This was $8500 and a considerable amount of cocaine or crack cocaine found in a motel room in Bedford County." The trial court found very little evidence of Defendant having a source of income outside of illegal drug activity. However, the trial court found that the "greater argument" for consecutive sentencing was that Defendant was an offender whose record of criminal activity was extensive. The trial court noted that Defendant had an extensive misdemeanor record extending over 20 years with many convictions involving drugs. The trial court ordered the two 12-year sentences to run consecutively to each other and the misdemeanor sentence to run concurrently to the second 12-year sentence, for a total effective sentence of 24 years in incarceration.

Defendant now challenges the trial court's sentence and argues that the effective sentence is excessive.

### B. Application of Enhancement Factors

In determining an appropriate sentence, a trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on mitigating and enhancement factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant makes on his own behalf as to sentencing; and (8) the potential for rehabilitation. T.C.A. §§ 40-35-103(5), -113, -114, -210(b). In addition, "[t]he sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." T.C.A. § 40-35-103(4).

Pursuant to the 2005 amendments, the Sentencing Act abandoned the statutory presumptive minimum sentence and rendered enhancement factors advisory only. *See* T.C.A. § 40-35-114, -210(c). The 2005 amendments set forth certain "advisory sentencing guidelines" that are not binding on the trial court; however, the trial court must nonetheless consider them. *See id*. § 40-35-210(c). Although the application of the factors is advisory, a court shall consider "[e]vidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114." *Id.* § 40-35-210(b)(5). The trial court must also place on the record "what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing." *Id*. § 40-35-210(e).

When an accused challenges the length and manner of service of a sentence, this

court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). If a trial court misapplies an enhancement or mitigating factor in passing sentence, said error will not remove the presumption of reasonableness from its sentencing determination "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. *State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. T.C.A. § 40-35-401, Sentencing Comm'n Cmts.; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

In this case, Defendant was convicted of Class B felonies, *see* T.C.A. § 39-17-417(c)(1); therefore, his sentencing exposure as a Range I offender was not less than eight nor more than twelve years for each conviction. T.C.A. § 40-35-112(a)(2). When determining the length of Defendant's sentence, the trial court considered three enhancement factors but only gave two factors weight during sentencing―"(1) The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range," and "(8) The defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community." In so doing, the court noted Defendant's numerous misdemeanor convictions and prior felony conviction. The court also outlined Defendant's history of failing to comply with conditions related to his release back into the community, including the crimes that Defendant committed while on bond and probation. The court also found that no mitigating factors applied. Therefore, we conclude that because the trial court properly considered the applicable enhancement factors when determining the length of Defendant's sentence and because Defendant received a sentence within the appropriate sentencing range, the trial court did not abuse its discretion in sentencing Defendant to the maximum sentence within his sentencing range. Defendant is not entitled to relief.

## C. Consecutive Sentencing

We also employ an abuse of discretion with a presumption of reasonableness standard of review when considering consecutive sentencing determinations by a trial court. *State v. Pollard*, 432 S.W.3d 851, 860 (Tenn. 2013). Thus, the presumption of reasonableness gives "deference to the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)." *Id.* at 861.

The procedure used by the trial courts in deciding sentence alignment is governed by Tennessee Code Annotated section 40-35-115, which lists the factors that are relevant to a trial court's sentencing decision. Imposition of consecutive sentences must be "justly deserved in relation to the seriousness of the offense." T.C.A. § 40-35-102(1). The length of the resulting consecutive sentence must be "no greater than that deserved for the offense committed." *Id.* § 40-35-103(2). The court may order consecutive sentences if it finds by a preponderance of the evidence that one or more of the following seven statutory criteria exists:

(1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

"Any one of these grounds is a sufficient basis for the imposition of consecutive sentences." *Pollard*, 432 S.W.3d at 862 (citing *State v. Dickson*, 413 S.W.3d 735, 748 (Tenn. 2013)). "So long as a trial court properly articulates reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the

sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal." *Id.*

Of the seven statutory factors, the trial court in this case found the following to apply:

(1)     The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood; [and]

(2)     The defendant is an offender whose record of criminal activity is extensive[.]

The trial court applied both factors but gave greater emphasis to factor (2). In considering the first factor, the trial court concluded that Defendant's extensive criminal record spanned twenty years and that he had little proof of income during that time. The trial court considered the pay stub that Defendant introduced but stated that the income was for a brief time. In considering the second factor, the trial court again noted the numerous misdemeanor convictions and the felony drug conviction that Defendant had obtained over a twenty-year span. As such, the court provided adequate reasons for aligning Defendant's sentences consecutively and, therefore, did not abuse its discretion. Defendant is not entitled to relief.

## III.  Merger

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, provides that "[n]o person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Courts have interpreted the Double Jeopardy Clause as providing three distinct protections: "(1) protection against a second prosecution for the same offense after acquittal; (2) protection against a second prosecution for the same offense after conviction; and (3) protection against multiple punishments for the same offense." *State v. Watkins*, 362 S.W.3d 530, 541 (Tenn. 2012) (citations omitted). Whether multiple convictions violate the protection against double jeopardy is a mixed question of law and fact, which this Court will review de novo without any presumption of correctness. *State v. Smith*, 436 S.W.3d 751, 766 (Tenn. 2014) (citing *State v. Thompson*, 285 S.W.3d 840, 846 (Tenn. 2009)).

Defendant argues that he received multiple punishments for the same offense. The Tennessee Supreme Court has divided such claims into two categories: (1) unit-of-prosecution claims, "when a defendant who has been convicted of multiple violations of the *same* statute asserts that the multiple convictions are for the same offense"; and (2)

multiple description claims, "when a defendant who has been convicted of multiple criminal offenses under *different* statutes alleges that the statutes punish the same offense." *Id*. at 767 (citing *Watkins*, 362 S.W.3d at 543-44) (emphasis in original). In this case, Defendant was convicted under a single statute, Tennessee Code Annotated section 39-17-417(a)(4), for possession with intent to sell or deliver .5 grams or more of cocaine and possession with intent to sell or deliver .5 grams or more of cocaine base. Therefore, his challenge is a unit-of-prosecution claim.

In *Watkins*, our supreme court stated:

When addressing unit-of-prosecution claims, courts must determine "what the legislature intended to be a single unit of conduct for purposes of a single conviction and punishment." Courts apply the "rule of lenity" when resolving unit-of-prosecution claims, meaning that any ambiguity in defining the unit of conduct for prosecution is resolved against the conclusion that the legislature intended to authorize multiple units of prosecution.

362 S.W.3d at 543-44 (citations omitted). "The legislature has the power to create multiple 'units of prosecution' within a single statutory offense, but it must do so clearly and without ambiguity." *State v. Lewis*, 958 S.W.2d 736, 739 (Tenn. 1997). "As for criminal offenses in Tennessee, statutes are to be construed 'according to the fair import of their terms, including reference to judicial decisions and common law interpretations, to promote justice, and effect the objectives of the criminal code.'" *Id.* (quoting T.C.A. § 39-11-104).

Therefore, the decisive determination is whether the legislature intended to create two units of prosecution for the possession of powder cocaine and possession of cocaine base. The legislature created criminal accountability for a defendant to knowingly "[p]ossess a controlled substance with intent to manufacture, deliver[,] or sell the controlled substance." T.C.A. § 39-17-417(a)(4). The Tennessee Sentencing Commission Comments to section 39-17-417 state, "The commission wished to make it clear that each of these acts was a separate offense and therefore listed the manufacture, delivery, sale or possession with intent to manufacture, deliver or sell each as a separate subsection." In subsection (c)(1) of the same statute, the legislature stated that the offense is "a Class B felony if the amount involved is point five (0.5) grams or more of *any substance* containing cocaine." T.C.A. § 39-17-417(c)(1) (emphasis added). There is no language in subsections (a)(4) or (c)(1) indicating that the legislature intended to create more than one unit of prosecution for possession of cocaine based on its form. In fact, subsection (c)(1) seems to ensure that that if cocaine is combined with any other substance, as is done in the production of crack cocaine, the total weight can be considered to determine the class of the offense. Therefore, we find no clear intent on the

part of the legislature to create separate units of prosecution for the possession of powder cocaine and the possession of cocaine base. Furthermore, even if there was some ambiguity, our supreme court stated in *Watkins* that "[c]ourts apply the 'rule of lenity' when resolving unit-of-prosecution claims, meaning that any ambiguity in defining the unit of conduct for prosecution is resolved against the conclusion that the legislature intended to authorize multiple units of prosecution." *Id.* at 543-44 (citations omitted). Even assuming some ambiguity, application of the rule of lenity dictates that there is only one unit of prosecution for possession with intent to sell or deliver .5 grams or more of cocaine and cocaine base. As such, Defendant's multiple convictions violate the principles of double jeopardy.

We, therefore, merge Defendant's convictions for possession with intent to sell .5 grams or more of cocaine and possession with intent to sell .5 grams or more of cocaine base. After merger, Defendant stands convicted of possession with intent to sell .5 grams or more of a Schedule II substance and possession or casual exchange of marijuana. Because Defendant was already sentenced to the maximum possible sentence within his sentencing range, we need not remand the case for a new sentencing hearing. Defendant's remaining sentences will be 12 years for the cocaine charge with a consecutive 11 months and 29 days for the marijuana charge.

## CONCLUSION

Based on the parties' briefs, the record, and the applicable law, we merge Defendant's convictions for possession with intent to sell .5 grams or more of cocaine and possession with intent to sell .5 grams or more of cocaine base but affirm the judgments of the trial court in all other respects.

_____
TIMOTHY L. EASTER, JUDGE

-12-